CYNTHIA WESTCOTT RICE, P.J.
{¶ 1} Appellants, Barthold Gensburg, Jr., et al., appeal from the judgment of the Trumbull County Court of Common Pleas, adopting the magistrate's decision, ruling in favor of appellees, Daniel Clark, et al., on appellants' complaint to request alteration of plat by clarification and substitution and declaratory judgment. At issue is whether the trial court erred in concluding a 56.94' portion of a street upon which appellants reside was publically dedicated when the subdivision was initially plotted. We affirm the trial court's judgment.
{¶ 2} Appellants are residents of Ina Drive in Lordstown, Ohio. The street dead ends into a stretch of farm land owned by appellees, who have access to their property via Ina Drive. Appellants asserted the original grantor of the land, Frank Giovannone ("Frank"), appellant Judith Gensburg's ("Judith") father, intended Ina Drive to extend only 785' east from Goldner Lane, Ina Drive's point of origin. Appellants requested the court to declare Ina Drive dedicated and accepted as 785' in length, as evidenced by various unrecorded instruments. To the extent the recorded plat did not reflect this intent, they sought to alter the recorded dedication, arguing Ina Drive stops 56.94' short of appellee's property line. They therefore sought to have the 56.94' portion in question revert to the Estate of Frank Giovannone in fee simple, subject to an easement dedicated to the Village of Lordstown ("Lordstown") for the purpose of providing a public turnaround for Ina Drive (aka "temporary tee" or "turnaround tee").
{¶ 3} Appellees maintained the original recorded plat indicates the entirety of the Ina Drive, i.e., the 785' portion as well as the 56.94' portion, for a total of 841.94', was the subject of Frank's dedication. They acknowledged the original plat includes "squiggly lines" at the entry of the turn around, but asserted the broken lines do not evince an intent to create a boundary. They further underscored the 1995 recorded replat of the area does not include the "squiggly lines" and therefore the most recent recorded evidence undermines appellees' position.
{¶ 4} Appellees filed a motion for summary judgment, which was denied. The matter proceeded to hearing before the magistrate, at which the following evidence was adduced:
{¶ 5} Frank and Ina Giovannone owned approximately nine acres of farmland in Lordstown, Ohio, which they planned to subdivide into residential lots. Judith worked with Frank planning the lots and the way in which the access road would direct traffic. According to Judith, her grandparents, the original owners, granted an easement to East Ohio Gas to install a high-pressure power gas line perpendicular to Ina Drive, 30' from the east boundary line of the subdivision. The gas line goes north and south through the 56.94'
*729 area in dispute. When East Ohio Gas received notice that the property would be subdivided, it sent a letter stating that no buildings or structures could be placed within 30' of the pipeline. Frank platted the last two lots in the subdivision differently from the others based upon this advisement. And, apparently, the letter prompted Frank to consider implementing the turnaround at the end of Ina Drive.
{¶ 6} With respect to the road, surveyor Richard Dittmer prepared a plat demonstrating Ina Drive terminating at 500' from an area designated "Giovannone Plat No. 5." The terminus of the 500' measurement was marked by a solid line with no provision for a turnaround at the dead end. (Plaintiff's Exhibits 2 and 2A) This plat was not signed and was not approved by Lordstown. Mr. Dittmer later prepared another plat for the Roadway Dedication Plat for Ina Drive. (Plaintiff's Exhibit 1) According to Judith, this plat measured Ina Drive at 785' from Goldner Lane and took into consideration the East Ohio Gas easement. It additionally provided for a boundary line at the entrance to the temporary tee, which was shaded by hash marks. This draft copy was also neither signed nor approved.
{¶ 7} In February 1979, the property on which Ina Drive is situated was dedicated to Lordstown, and the planning commission approved and accepted the dedication. (Plaintiff's Exhibit 5). In March 1979, the plat was signed by all necessary parties, including Frank, and recorded. The plat shows what was referred to as a "squiggly line" across Ina Drive at the 785' point and outlines the shape of what is described as a "temporary tee," or turnaround. (Plaintiffs Exhibit 6). The plat further provided that the full length of the road, including the temporary tee, is 841.94', the 785' plus 56.94. Unlike the unrecorded plat in Plaintiff's Exhibit 1, the recorded plat did not include a solid boundary line at the entrance of the temporary tee and the area was not hash-marked.
{¶ 8} Ina Drive is paved up to the end of the temporary tee. There is an eight-foot grassy area between the temporary tee and the Clark boundary line. There are two storm drains in the grassy area that Lordstown installed some time after the plat was approved. Frank purchased the pipe for the drains and the catch basins. Lordstown installed and has maintained the sewers since they were installed and, similarly, has maintained the entirety of Ina Drive since it was dedicated.
{¶ 9} In January 1995, Frank had the relevant property replatted. The replat was duly recorded and does not include a numerical measurement of Ina Drive, but shows the street extending up to the edge of the temporary tee. (Plaintiff's Exhibit 7). In other words, the replat deleted the "squiggly line" that appeared on the original 1979 map and, as a result, does not distinguish, in any way, the 56.94' parcel in question from the remainder of Ina Drive.
{¶ 10} The surveyor who replatted the area, Jerry Daniel, testified that the deletion of the squiggly line had no effect on the length of the subject right of way. In Mr. Daniel's professional opinion, the correct measurement of what Frank actually dedicated was 841.94'. Mr. Daniel testified that solid lines are used to designate a boundary line and dotted or dashed lines are generally used to denote other designations, such as an easement. Moreover, Mr. Daniel testified the original recorded plat sets forth the 841.94' to the nearest hundredth decimal. In denoting boundaries, he maintained, surveyors carry measurements to the nearest hundredth. Alternatively, Mr. Daniel testified the 785' is not carried to the nearest hundredth and thus cannot represent a boundary measurement. Rather, in his opinion, that *730 measurement simply indicated where the beginning of the temporary tee should be designated.
{¶ 11} Further, Mr. Daniel pointed out that the original recorded plat provides that the "area in streets" is 1.310 acres. Mathematically, if one multiplies 841.94' by 60' (the width of Ina Drive) and adds this sum to the result of multiplying 260.66' (the length of Goldner Drive included in the plat) by 25' (half of the width of Goldner Drive), the result is 57,032.9'. Then divide this amount into 43,560' (the square feet in an acre), the result is 1.310. These figures appear in the original recorded plat and support the conclusion that the Ina Drive right of way that was dedicated to Lordstown was 841.94 feet.[1]
{¶ 12} Civil engineer and surveyor, J. Robert Lyden, testified on appellants' behalf. He testified that, based upon the various unrecorded plats and the recorded plats, the dedicated portion of Ina Drive was 785' in length. Mr. Lyden testified the 1995 recorded replat appeared to have "smudges" where the "squiggly lines" were on the originally recorded plat. He observed these smudges may indicate something was "erased" on the 1995 replat. Mr. Lyden further noted adjoining property owners' deeds included exceptions for a temporary turnaround.[2] In his view, this indicated the area in question was not intended to be dedicated, but remained titled with Frank, and subject to an easement for public use.
{¶ 13} Mr. Lyden also prepared a "clarification replat" based upon his conclusion that Frank intended Ina Drive to be 785', reserving the 56.94' area in dispute as an easement. In support of his position, he referenced Plaintiff's Exhibit 1, an unrecorded "roadway dedication plat" that depicts Ina Drive terminating with a solid boundary line at 785' from Goldner Lane. Mr. Lyden maintained this document unequivocally demonstrated Frank's intent to retain the 56.94' portion at issue. Moreover, he noted that even though the original recorded plat indicated a measurement of 841.94'>, it was of "lesser importance" because that measurement was in brackets. Of more significance was the unbracketed measurement of 785' which, in his view, represented the length of the dedication which terminated at the squiggley lines. Mr Lyden further underscored that an unrecorded version of the 1995 replat included a dotted line at the 785' point of Ina Drive. Even though this was not in the recorded version, the apparent smudges on the recorded version suggest the line may have existed, but were removed.
{¶ 14} Other witnesses testified to their understanding regarding Frank's intent as it related to the temporary turnaround. Property owner Jeffrey Croyle testified he was led to believe that Ina Drive would *731 always remain a dead-end street because Frank had retained ownership of the 56.94' area. Another owner, Ronald Hipple, testified Frank specifically stated that Ina Drive would remain a dead-end street because he owned the turnaround. Barthold Gensburg, Frank's son-in-law, testified he was present during the construction of the development and the street. He testified Frank indicated that the road would never be a through way because he felt the dead-end would protect the property values.
{¶ 15} After the hearing, the magistrate concluded that the 56.94' area in question was included in the dedication and right-of-way for Ina Drive, as accepted by Lordstown. As a result, the right-of-way for Ina Drive measures 841.94' in length. Appellants objected to the magistrate's decision and, subsequently filed a motion for newly discovered evidence. Appellants contended they were unable, prior to the hearing, to discover the whereabouts of a contractor who installed the turnaround. Judith, however, located the witness, Dan Lutz, who stated that Frank told him he wished to reserve to himself the disputed property and the street was initially installed at a length of 785'>.
{¶ 16} On February 7, 2017, the trial court overruled appellant's motion to introduce the newly discovered evidence. The court determined that Judith failed to articulate in her affidavit any facts regarding the attempts she made to locate the witness prior to trial. On the same date, the trial court overruled appellant's objections and adopted the magistrate's decision in its entirety. The trial court stated that even though appellants cited the transcript in their objections, they failed to file the same. Appellants subsequently filed a Civ.R. 60(B) motion for relief from judgment. Appellants explained they requested that the transcripts be filed, but, for whatever reason, the filing did not occur. The trial court granted the motion. Appellants moved the trial court for reconsideration of their motion to introduce newly discovered evidence. On March 21, 2017, the trial court denied the motion and overruled appellants' objections and adopted the magistrate's decision. This appeal followed.
{¶ 17} Appellants assign six errors for this court's review. Their first assignment of error states:
{¶ 18} "The magistrate and trial court abused their discretion and committed prejudicial error in failing to consider the parole [sic] testimony of witnesses and evidence of exhibits that proved the dedicator of a plat intended the street to dead-end and stop 57 feet short of the subdivision property line."
{¶ 19} Appellants assert the trial court erred in *732 concluding Frank intended to dedicate the entire 841.94' strip. Appellants argue the parol evidence testimony relating to Frank's alleged desire to retain the 56.94'> portion provided sufficient, credible evidence to establish the dedication included only 785', stopping at boundary of the temporary turnaround.
{¶ 20} Appellants point to the weight of the testimony supporting their position. They also emphasize that certain unrecorded plats appear to evince the clear intention to create a boundary where the turnaround begins. Appellants further underscore that the original recorded plat included "squiggly lines" setting off the 56.94' portion. Even though the "squiggly lines" do not necessarily imply a boundary, appellants maintain the lines create an ambiguity as to what Frank intended to dedicate. Because they presented an abundance of evidence that Frank's intention was to retain the temporary turnaround, appellants assert the magistrate erred in concluding Frank intended to dedicate the entirety of the road.
{¶ 21} In order to constitute a common-law dedication of real property, three elements must be established, to wit: "(1) the existence of an intention on the part of the owner to make such dedication; (2) an actual offer on the part of the owner, evidenced by some unequivocal act, to make such dedication; and (3) the acceptance of such offer by or on behalf of the public." Bachtel v. Strickland , 4th Dist. Jackson No. 550, 1987 WL 20398, *3 (Nov. 17, 1987), citing Vermilion v. Dickason , 53 Ohio App.2d 138, 372 N.E.2d 608 (6th Dist.1976).
{¶ 22} The intention to dedicate may be express or implied from circumstances. Hicksville v. Lantz , 153 Ohio St. 421, 425, 92 N.E.2d 270 (1950). "In order to imply acceptance by the public of the dedication of a street or road, the public authority must take some positive or affirmative action to indicate that it has taken control or direction over the property, such as improving the street or road." Bachtel , supra , citing State ex rel. Fitzthum v. Turinsky , 172 Ohio St. 148, 153, 174 N.E.2d 240 (1961).
{¶ 23} There is no question that Frank formally and expressly dedicated Ina Drive to Lordstown, who accepted the dedication in February 1979. Appellants, however, submitted evidence that Frank only intended to dedicate 785' with the reservation of an easement for the benefit of the public on the remaining 56.94'. Although the "squiggly lines" setting off the subject portion might indicate an easement, this designation is not a universal indicator of an easement. And there is nothing in the language of the dedication indicating Frank intended to retain the 56.94' portion or that the dedication was subject to a 56.94' easement Frank intended to reserve for the public's benefit. The testimony indicated that a solid line would be sufficient to designate a property boundary. There was no evidence in any of the recorded plats that the 785' mark was a boundary and hence there was no objective evidence that Frank intended that point to be the dedication's end point.
{¶ 24} Moreover, the original plat includes both a 785' measurement and an 841.94' measurement. The latter is in brackets. Appellants argue the brackets suggest the 841.94' measurement is secondary to the unbracketed 785'. This assertion, however, is undermined by the evidence that, when the 841.94' measurement is used to determine the acreage of the "area in roads," the mathematical calculation matches the acreage on the recorded plat, i.e., 1.310 acres. If 785' was used, even in light of the original surveyor's 60' over-measurement, that measurement is below the stated 1.310 amount (i.e. 1.230).
{¶ 25} Additionally, and possibly most telling, was the replat that Frank commissioned in 1995. That replat does not include a measurement of Ina Drive; it also, however, fails to include the "squiggly lines" setting off the 56.94'> portion. Even though various unrecorded plats provided some indication that Frank may have wished to retain the 56.94' portion, the 1995 replat provides no indication that he intended to retain that portion or otherwise reserve it for an easement. Mr. Daniel, the surveyor who replatted the area in 1995, testified, given the evidence, the actual amount dedicated was 841.94'>. He maintained there was a boundary line at the entrance to the temporary turnaround. Moreover, he testified when surveyors make measurements, they round to the nearest hundredth. Because the 841.94' measurement was so rounded, it was a more credible rendition of what was dedicated.
*733 {¶ 26} And, even though there were smudges on the mylar replat as well as a dotted line separating the 56.94' portion from the remaining 785'> in an unrecorded version of that replat, this evidence is of little persuasive value. If the smudges represent erasure marks, this demonstrates an intent to remove any indicia of a boundary; similarly, because the final recorded replat does not include the dotted line, this provides support for the position that Frank ultimately intended to treat the entirety of the land, 841.94', as one dedicated property.
{¶ 27} Appellants take issue with apparent inconsistencies in the magistrate's decision. To wit, they note the magistrate found "* * * the testimony of Plaintiff Judith Gensburg that Frank Giovannone specifically told her that he intended Ina Drive to be 785' in length on the Plat to be dubious, considering that she testified to an exact number almost 40 years after her father purportedly made this statement." But, they note, the magistrate purportedly repudiates her finding when she observes "* * *while it is very likely that Franke Giovannone initially wanted Ina Drive to extend only 785'>, after learning of the subdivision regulations, his intentions could not have come to fruition when drafting the Giovannone Plat No. 4 that was actually recorded."
{¶ 28} Even though the magistrate found Judith's testimony "dubious," such a finding, when placed in context, appears to be a comment on the credibility of Judith's precise recollection. Alternatively, the magistrate's follow-up finding appears to concede that Frank may have desired to retain the turnaround, something Judith testified to and the magistrate apparently found credible. Still, the property in question did not possess a permanent lot identification ("ID") number and the formal dedication lacks reservation language in the dedication. As such, the magistrate could reasonably find that Frank's ultimate intention in dedicating the property may have been different from his initial desires. These initial desires, however, do not undermine the conclusion that the plat Frank ultimately recorded included the full 841.94'> portion.
{¶ 29} In Eastley v. Volkman, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Ohio Supreme Court stated the following in regard to appellate review of manifest-weight challenges in civil cases: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' " Id. at 334, 2012 -Ohio- 2179, 972 N.E.2d 517, quoting Seasons Coal Co., Inc. v. Cleveland , 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984) fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978). A reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Eastley, supra .
{¶ 30} The language in the dedication did not except the portion and did not reserve it for an easement. Moreover, the original plat, while somewhat ambiguous, does not refute the magistrate's findings and conclusions. And the recorded replat (which includes no indication of a boundary at the turnaround), especially in view of the unrecorded replat (which included a dotted line at the entrance to the boundary line), bolsters the magistrate's ultimate conclusion. Given the evidence, it appears that Frank did originally intend to retain the portion in dispute. The objective evidence, however, supports the magistrate's decision that, despite Frank's arguable initial *734 wishes, Frank intended to dedicate the entirety of the road. The magistrate did not clearly lose her way and we perceive no manifest injustice in the magistrate's ultimate legal conclusion. We therefore hold the trial court did not err in adopting the magistrate's decision.
{¶ 31} Appellants' first assignment of error lacks merit.
{¶ 32} Appellants' second assignment of error provides:
{¶ 33} "The magistrate and trial court committed prejudicial error and an abuse of discretion in failing to apply a burden of proof of 'clear evidence' in its determination of the case."
{¶ 34} Appellants contend that where, as here, reasonable minds can come to different conclusions relating to the amount of property to be dedicated, appellees had the burden of establishing by "clear evidence" an intention to dedicate the entirety of the property. Because there was testimony from various witnesses that Frank intended to retain the property, appellees did not present "clear evidence" that Frank intended to commit the entire property to the public.
{¶ 35} Preliminarily, appellants emphasize that an "owner's intention to dedicate property to public use as a highway must be established by clear evidence ." (Emphasis added.) State ex rel. Mentor Lagoons, Inc. v. Wyant , 166 Ohio St. 169, 140 N.E.2d 788 (1957). It is not necessarily obvious, however, that Wyant is announcing a heightened standard for establishing a public dedication. The typical burden of proof in a civil case is a preponderance of the evidence. At least one court has, citing Wyant , elevated that burden in a public-dedication-of-property case to clear and convincing evidence. See Becker v. Cox , 12th Dist. Butler No. CA84-04-044, 1985 WL 8688, *4 (June 10, 1985). Regardless of whether the Supreme Court in Wyant intended on elevating the standard in public dedication cases or was simply underscoring that the grantor's intent is of paramount concern and must be clear from the evidence, we conclude appellees presented sufficient, credible evidence to establish the 1979 dedication included the full 841.94'>.
{¶ 36} As discussed under appellants' first assignment of error, the dedication and both the original recorded plat and the recorded plat supported the trial court's conclusion. Even though there was evidence that Frank originally desired to retain the disputed property, the recorded instruments evince a different intention. In is not uncommon for an individual to desire or intend an outcome but, in the face of outside conditions, that original intention is not achievable and, as a result, the intention changes. A desire represents what one wants, while an intention represents one's purpose in light of surrounding circumstances and one's actual course of action. One's desires, accordingly, do not necessarily have to match one's intentions.
{¶ 37} Frank may have wanted to retain the property in question at the time of the original recorded plat; as discussed above, however, the evidence in the recorded instruments is silent as to a reservation. Moreover, the original recorded plat contains measurements, which mathematically support the inference that Frank intended, despite his initial desire, to dedicate 841.94'> of Ina Drive. And, as will be discussed in greater detail below, the desire to retain the portion at issue was unworkable because the subdivision regulations do not specifically permit "residue reservations" and the size of the parcel is too small to be designated a "lot." In light of these points, Frank's wishes were inconsistent with existing regulations and, as such, one could reasonably infer he intended to *735 dedicate the whole road to actualize his greater purpose of developing the area.
{¶ 38} This is again manifest in the 1995 replat-the unrecorded replat sets forth a dotted boundary line at the entrance of the turnaround; the recorded replat does not include any such boundary. Even though Frank may have both intended and desired to retain the property in question, the area was nevertheless substandard pursuant to the regulations and the recorded replat removes any indication that the turnaround was separate from the rest of the road. The objective evidence evinces an intention that the entirety of the road was subject to the dedication.
{¶ 39} We therefore hold there was "clear evidence" of Frank's intention to dedicate the full 841.94'. He may not have wanted to do so originally, but the recorded documentation supports the inference that he ultimately intended to dedicate the turnaround property.
{¶ 40} Appellants' second assignment of error lacks merit.
{¶ 41} Appellants' third assignment of error provides:
{¶ 42} "The magistrate and trial court committed prejudicial error and an abuse of discretion in finding on page two of the magistrate's decision that, "... Richard Dittmer, a surveyor, prepared a plat map showing Ina Drive terminating at 500 feet by a solid line with no turnaround tee" and finding on page one that Ina Drive ends at a stretch of farmland owned by Daniel and Pamela Clark who have access to their property via Ina Drive."
{¶ 43} Appellants first contend that the magistrate's factual findings are erroneous because they misrepresent the information on Plaintiff's Exhibit 1, an unrecorded plat prepared by Surveyor Richard Dittmer prior to the 1979 recorded plat. The magistrate's findings, however, relate to Plaintiff's Exhibit 2. In that exhibit, Mr. Dittmer designates a 500' measurement from what appears to be an un-numbered plot, designated "Giovannone Plat No. 5," up to where, in later renderings, the turnaround tee begins. In Plaintiff's Exhibit 2, there is a pencil-sketch of the turnaround tee, but there is no formal sketch of the area. Regardless, the magistrate's findings, as they relate to Plaintiff's Exhibit 2, are consistent with the exhibit and any error in the description is harmless.
{¶ 44} Appellants further note that the magistrate's findings are incorrect in that the road does not end at the Clarks' property line. The magistrate acknowledged that the improved area of the dedication stopped short of the property line; she further acknowledged that the unimproved portion, a grassy area, abutted the property line. The dedication included the entirety of the improved and unimproved roadway. We therefore discern no error in the magistrate's findings.
{¶ 45} Appellants' third assignment of error lacks merit.
{¶ 46} Appellants' fourth assignment of error provides:
{¶ 47} "The magistrate and trial court committed prejudicial error and abused its discretion in determining that the 57 foot residue reservation did not comport with the minimum lot size required by Lordstown Subdivision Regulations; required a parcel ID number; and that the record plats do not contain a 57 foot measurement anywhere."
{¶ 48} Appellants first contend the trial court erred in emphasizing that the property in question did not meet minimum lot size regulations. They assert Frank intended to reserve the property as a temporary turnaround, not a lot to build upon. At the hearing, however, appellants submitted "Land Subdivision Regulations for Lordstown *736 Village, Ohio." The Exhibit does not specifically permit residual lots. Moreover, the Regulations expressly state that "[l]ots shall meet all lawful requirements of Lordstown Village Zoning Ordinance." During direct examination, counsel for appellees had the following exchange with Mr. Daniel:
{¶ 49} "Q. Are you familiar with Village regulations, any Village regulations that would prohibit a roughly 57-foot strip of property from existing alone?
{¶ 50} "A. I believe Village regulations require any residual land to be subject to the requirements of a lot.
{¶ 51} "Q. Okay. Do you know what the requirements of a lot are in the Village?
{¶ 52} "A. I believe the minimum lot size is 100-by-200.
{¶ 53} "Q. And you believe that this, a 57-foot strip of property, would comply with Village regulations?
{¶ 54} "A. No. I don't think so, no.
{¶ 55} Moreover, Mr. Lyden, appellants' expert, had the following exchange with appellees' counsel:
{¶ 56} "Q. Are you aware of what the Village's ordinance or regulations are with respect to residue parcels?
{¶ 57} "A. I believe it says that they should conform with the zoning regulations.
{¶ 58} "Q. Do you know whether or not a 57-foot strip of land would comply with the zoning regulations?
{¶ 59} "A. Not likely."
{¶ 60} Appellants characterize the area in question as a "residue reservation." Because, however, there is no express provision in the regulations for such a reservation, it can be reasonably, and perhaps must be viewed as a "lot" for the purpose of appellants' position. Each surveyor testified that the area would not meet the lot size requirements for Lordstown zoning. Hence, the magistrate did not err in concluding the 56.94' portion would have been a substandard lot.
{¶ 61} Appellants next assert the failure to designate the 56.94' portion with an auditor's parcel ID number had no bearing on whether the reservation was intended to be dedicated. While appellants are correct, the lack of an ID number could also be a function of Frank's ultimate intention to dedicate the entirety of Ina Drive. To the extent the area was insufficient to meet zoning regulations, it could not be considered a "lot." As such, Frank's initial desire to retain the area could have been frustrated by its substandard size. In light of the lack of reservation in the dedication, as well as the lack of a clear and obvious boundary separating the area from the remaining portions of Ina Drive and the area's small size, one could reasonably conclude the lack of a parcel ID was a function of Frank's intention to dedicate the 841.94' to Lordstown. In other words, it did not have a parcel ID because it was part of the public-road dedication.
{¶ 62} Appellants further argue that the magistrate's observation that the recorded plats "do not contain a 57 foot measurement anywhere" is irrelevant. We do not agree.
{¶ 63} Each parcel on the recorded plats is measured. If the 56.94' area was separately retained, it also would have been separately measured. Hence, the lack of a measurement provides an additional indication that the area in question was intended to be dedicated.
{¶ 64} Appellants' fourth assignment of error lacks merit.
{¶ 65} For their fifth assignment of error, appellants contend:
*737 {¶ 66} "The magistrate and trial court abused its discretion and prejudicially erred in speculating "... that while it is very likely that Frank Giovannone initially wanted Ina Drive to extend only 785', after learning of the subdivision regulations his intentions could not have come to fruition when drafting the Giovannone Plat No. 4 that was actually recorded."
{¶ 67} We fail to see how the magistrate's observation is speculative. As previously discussed, Lordstown subdivision regulations do not provide for residual parcels, but only lots. Lots must comport with Lordstown zoning ordinances and each surveyor testified the area in question was too small to meet the size requirements. The original recorded plat and the recorded replat do not specifically set forth a solid boundary at the 785' mark; indeed, the 1995 replat has nothing that would suggest the temporary turnaround was anything other than part of the entirety of Ina Drive. Each of these premises, put together, allow for the reasonable inference that even though Frank initially desired to retain the parcel, the regulations prohibited such a residual reservation.
{¶ 68} Appellants' fifth assignment of error lacks merit.
{¶ 69} Appellants' sixth and final assignment of error provides:
{¶ 70} "The trial court abused its discretion in overruling appellants' motion and reconsideration of its motion to introduce newly discovered evidence pursuant to O.R.C.P. Rule 53(D)(4)(b) and (d)."
{¶ 71} Appellants attempted to introduce new evidence of Dan Lutz, a contractor who worked on the turnaround. They maintained they attempted to locate Mr. Lutz before trial, but were unable to find him. After trial, they found Mr. Lutz who, according to appellants, was prepared to testify that Frank had stated his intention to reserve the disputed portion of property and that the street was 785'. Appellants contend the trial court abused its discretion in denying their motion because its reasoning, i.e., that Judith failed to articulate why they could not have been obtained at the time of trial, was insufficient.
{¶ 72} Even assuming the trial court's justification in denying the initial motion and the motion for reconsidering was wanting, Mr. Lutz' testimony would have been cumulative of at least four other witness' testimony relating to Frank's purported desires vis-à -vis the turnaround. As discussed under appellants' first assignment of area, and in various places throughout this opinion, there was sufficient, credible evidence to support the magistrate's conclusion that Frank intended to formally dedicate the turnaround property, despite his initial desire to retain the same. We therefore hold the trial court did not err in denying appellants' motion to introduce newly discovered evidence as well as its denial of their motion for reconsideration of the same.
{¶ 73} Appellants' sixth assignment of error is without merit.
{¶ 74} For the reasons discussed in this opinion, the judgment of the Trumbull County Court of Common Pleas, adopting the magistrate's decision, is affirmed.
TIMOTHY P. CANNON, J.,
COLLEEN MARY O'TOOLE, J.,
concur.

Mr. Daniel testified, however, that the original drafter incorrectly calculated the amount of acreage. That is, Mr. Daniel stated the original drafter failed to account for the 60' overlap of Ina Drive (its width) in his measurement of Goldner Drive. Nevertheless, he testified, this error has no impact on his ultimate opinion because such an error is an easy mistake to make. And, using the 785' measurement, in light of the 60' increase, the equation fails to yield an amount of acreage close to 1.310 acres.

The language in the referenced deeds was not consistent. Some used the language "[s]aid property is subject to a turnaround tee," others stated "[e]xcepting therefrom a portion of the southeast corner * * * for a temporary turnaround." The magistrate noted that the language "subject to" suggested concession of an easement, but the phrase "excepting therefrom" indicates the deed holder did not own that portion. Mr. Lyden agreed that the wording "excepting therefrom" was incorrect, but still maintained Frank conveyed an easement in favor of the public for a turnaround.